Our third case on the call of the docket today, September 18, 2012, is agenda number 15, case number 113414, Paul Carr, et al, Appellants v. Christopher Koch, et al, Appellees, counsel for the appellants. Alexander Polikoff Thank you, your honors. Good morning. I'm Alexander Polikoff for the plaintiffs' appellants. Scott Lassar is sitting at the table with me. You, of course, have the extensive briefs, your honors, so I'm going to focus on the questions raised by the state, beginning with Edgar and why Edgar doesn't control here as the state contends. As your honors know, we've alleged a sea change in education since the Edgar decision was rendered. Some, but not all, of the alleged changes are promulgation of the Illinois learning standards, of mandatory tests aligned to those standards, and of a series of penalties if the tests aren't passed. We have also alleged that the collective effect of these changes is to erode local control over basic education, so much so as to eliminate the rational basis that in Edgar was held to have justified the inequities that flow from the state's school funding system. If these allegations are taken as true, as we think they must be at this stage of litigation, it follows that the Edgar decision does not bar the way to a hearing in this radically different case. But, the state says, the plaintiffs don't have standing to assert their unequal treatment claim. As I read the state's brief, your honors, it advances three separate standing arguments, each of which I'll respond to briefly. First, permit me to observe that the standing requirements are designed to preclude uninterested persons from suing, not to preclude a valid controversy from being litigated, and who, if I may ask, could possibly be more interested in the unequal treatment complaint? Of the three standing arguments advanced by the state, two, I believe, may be responded to summarily. One is redressability. But, in our opinion, this is really a non-issue. For, if the funding system were declared invalid, it would be the duty of the legislature to craft a new system of redressability. The second standing argument that is likewise, in our opinion, a non-issue is that plaintiffs' districts, school districts, voluntarily tax more than is necessary to secure the basic or foundation level of per-pupil funding. But, if, your honors, as is uncontestably the case, plaintiffs are treated unequally by the funding system, that is, unfairly, up to that foundation level of per-pupil funding, the unfair treatment negatively affects their ability to, quote, go higher in taxation than the foundation level. Because plaintiffs' poor districts have had to use up more of their tax capacity than wealthy districts to reach the foundation level. And, therefore, whatever taxing level is chosen, the infection, so to speak, of the unequal treatment up to the foundation level remains. The final standing argument, which is the one accepted by the appellate court, is that because school taxes are imposed by local taxing authorities, not by the state, the plaintiffs can't trace their unequal treatment injury to the state's funding system. The reason, your honors, this view is incorrect is the principle that standing exists to challenge government action that is a but-for cause of the complaint of injury, even if the action of a third party is also a necessary cause of the injury. It is true that the unequal treatment the plaintiffs complain of would never be visited upon them if their local taxing authorities didn't tax. And, for that reason, the local taxing authority has got to be acknowledged to be a necessary cause of the plaintiff's injury. But it must be taken as equally... Counsel, how exactly would you define your injury in this case, plaintiff's injury in this case? How does it define plaintiff's injury? How would you define? In this way, your honor, plaintiffs are residents of poor school districts, property poor districts. In order for those plaintiffs to reach for their students, the per-pupil level of funding that the state says is necessary for basic education, they must tax themselves, given that the state's funding system is linked to the property tax, at a given level. Other similarly situated taxpayers, meaning they own property of equal value but in different and wealthier districts, can reach that same level of funding per pupil by taxing themselves at a lower level than our plaintiffs. Ergo, the plaintiffs having to tax more than a similarly situated, having to pay more taxes than a similarly situated taxpayer has to pay to reach the same level of funding the state designates is the injury. That's unequal treatment. All right. Let me ask you this. Is it your position, I'm trying to understand this. Is it your position that the injury is a direct result of the statute at issue, based on what you just said, or it does not have to be a direct result of the statute? It is a direct result of the statute because the statute classifies districts into poor and wealthy. And as a result of the classification, the statute further provides that's the basis for deciding how much money the state's going to give. So, yes, Your Honor, it flows directly out of the statute. And you're not suggesting that it does not have to be a direct result for standing? Correct. I'm not suggesting that. It must be. It's implicit, really explicit, because of the classification of districts that's forthrightly stated in the statute. Mr. Polikoff? Yes. Let me take you back to your answer on the question that Justice Thomas posed about the injury. And maybe I didn't hear you correctly, but I thought you started off by saying, referring to the students. But as you explained it, if I heard you correctly, you're talking about the taxpayers, not the students, who have to pay a higher amount. I may have misspoken. I apologize, Your Honor. I may not have heard it right. But is it really the taxpayers who are injured? It's correct, Your Honor. This is a taxpayer suit. It's not a school district suit. Well, and it's not really the students who are injured, is what you're saying. Maybe they are injured in the scheme of things. But you're saying that the ones who are directly injured are the taxpayers. Exactly. They are the plaintiffs. And the unequal treatment that I meant to speak of, if I misspoke again, I apologize, the unequal treatment is visited on the taxpayers because of the different taxing results I described in answer to Justice Thomas' question. Is it correct that if it's a foundation level district, that the lower the tax rate in the district, the more the state puts into the formula? That's correct, Justice O'Connor. Is there a penalty imposed if they don't meet the foundation level? Pardon me, Your Honor? Is there a penalty imposed if they don't meet the foundation level? None. There is no requirement that they meet the foundation level. Of course, if they tax up to the assumed rate, excuse me, if they don't tax up to the assumed rate, the consequence is that they don't reach the foundation level of funding for the pupils in their district. And as you honors know, we allege that then they put themselves at risk of the penalty system that the state has imposed. So there's a strong incentive to tax at least to the assumed level. Do you mean student evaluations? The penalty would be the not meeting the student evaluations? The penalty of what? Do you mean what is the penalty imposed? Well, there's a whole series of penalties laid out in the statute. The ultimate penalty is to take over the school district. The state may ultimately actually take over the school district. I want to emphasize that it's not the precise nature of the penalties that is of most concern. As the cases in the briefs indicate, it's the risk of penalty, the existence of that penalty creates a risk, and that has the coercive effect. I want to emphasize and help me to understand this. It's my understanding that school districts are supposed to tax to a certain level, a certain rate, and in these cases, in both of these districts, they're taxing at a higher rate than necessary to reach the foundation level. And I've indicated why I think that doesn't make any difference. Counsel, the state's funding of schools is not tied to how the school performs on the learning standards, right? That's correct, Your Honor. So how do you address the state's argument that that makes the injury too attenuated to confer standing? Because the injury is the unequal treatment I described in answer to your earlier question. The unequal treatment exists whatever else ensues. In fact, the state makes, in our view, the mistaken assertion that part of our standing problem is we haven't alleged that penalties have ever been imposed. It doesn't matter whether penalties have ever been imposed or not. The risk out there, the existence of the potential penalties is sufficient. But the gist of the injury is the unequal treatment which exists regardless of what else ensues. What follows? We've cited several cases, Your Honor, on the standing question, which indicate that, and I'm now returning to the standing argument that the appellate court made, which emphasized that the tax was in fact imposed by local taxing authorities and not by the state. And in the cases we've cited, plaintiffs were held to have standing to attack a state law, as we are doing here, involving taxes that were imposed by local taxing authorities and not by the state itself. That's exactly the situation we have here. So we think those cases are very indicative of what the right result is. As our briefs make clear, I'm not going to go into it unless there are questions, we think the state's attempt to distinguish these cases are pretty underwhelming. They amount basically to pointing out factual differences in the cases that have no relevance to the but-for principle that I referred to a moment ago. And I think, Your Honor, that but-for principle is the essence of the standing issue, and if there are no further arguments about it, I'm going to move on to the remaining argument the state makes, which is that we have failed to state a cause of action. Two reasons, apart from the Edgar decision I've already discussed, are advanced by the state for its no cause of action argument. The first is the assertion that some local control remains. We've made detailed allegations about the extent of erosion of local control from all that the state has done. We say the effect of that is to remove local control effectively and put it in Springfield. The state says, oh, no, there is local control remaining. Maybe, maybe not. This is a factual question for resolution at the lower courts, not in this court, Your Honor. The state's second reason is that we haven't alleged deliberate or intentional discrimination. But that assertion ignores the settled law that when a statute contains an express classification, as this one obviously does, no such allegation of deliberate or intentional discrimination is necessary. Your decision in the Jacobson v. Public Aid case makes that quite clear. So, Your Honors, we think that the cause of action issue is as clear, the answer to the cause of action issue is as clear as the answer to the standing issue. And I urge, therefore, that the appellate court decision should be reversed and that this court should rule that plaintiffs do have standing, that they have pled a good cause of action, and that the case should be remanded to the circuit court for proceedings consistent with this court's ruling. And I thank you, Your Honors. Thank you. Counsel for the appellee. Thank you. Good morning. My name is Paul Burks. I'm an assistant attorney general, and I'm representing the Illinois State Board of Education. The plaintiffs here have sued to invalidate a state statute alleging it causes disparate property tax rates. And the statute they've challenged is the school funding statute, which is not a tax statute at all, but a subsidy statute. It's a statute that's designed to allow the General Assembly to calculate the subsidies that it's going to provide to each school district to provide public education. So a quick description of the statute, and then I'd like to turn to the two issues, which is whether or not their injury is fairly traceable to this statute and whether the relief they request would redress that injury, the standing issue. And then second, the merits issue, whether they've stated a claim for equal protection in light of this court's decision in Edgar and in light of the fact that the statute, in fact, provides vastly superior subsidies to the plaintiff's school districts than to the supposedly favored school districts. So those are the issues that I'd like to discuss. The way the statute works is it's directed towards the General Assembly. It's a way for the General Assembly to calculate how much money to give to each school district. And the way it does this is it puts together a committee to determine the amount of money that's sufficient to provide an adequate education. And it works backwards from there. It looks at that amount of money, and it assumes that a local school district will tax its own people sufficiently to provide some of that money. And if the school district doesn't have sufficient property wealth, the state then ponies up enough money to get every school district to that level, to that minimum level. Now, when I say it assumes this local school district will provide enough money, it doesn't mandate that a local school district provide enough money. In fact, Section 8.05A4 specifically says no school district has to tax at any particular rate. The state is merely using that to calculate its own commitment. It's not looking to the school district to meet that commitment or to exceed that commitment or anything else. It will provide the same amount of money based on that calculation regardless of what the school district does. So let's turn to their claim and why we think that they've really barked up the wrong tree, why their claim is not fairly traceable to the state. If the school district set an extremely low rate, it wouldn't make any difference? It would not make any difference. If the school district set a rate of zero, the state would still provide the exact subsidy calculated based on the statute. Because they assume a 3% rate, but they don't mandate it. So they would continue to provide the same amount of money. So what Mr. Polikoff says when he described his injury in response to Justice Thomas' question is, we're from property-poor districts, we have to tax at a higher rate to reach the foundation level, this minimum level that the state uses in its own calculations, and other districts don't have to tax at that high level. So let's look at that foundation level. As I've said before, if they don't tax to meet that level, there's no direct penalties. The state doesn't do anything about it. So what the plaintiffs have done is they've sort of gone down the road a little bit and said, well, if we don't tax at that level, what's then going to happen is we're not going to be able to sufficiently educate our students in order to pass state-mandated tests, and that then is going to lead to the state coming in and taking over our school districts. So let's talk about whether or not in this, and that's an indirect harm. I don't see how that's not a direct harm of the statute. That's clearly an indirect, what they're complaining about is that if they don't meet that level, they're going to be indirectly harmed by a state, by an ultimate, eight years or ten years or whatever down the road, indirect takeover of their school districts. But even maybe an indirect harm is maybe a generous way to put it, because how is a taxpayer harmed if the state takes over the school district? A taxpayer suffers no harm at all. Who is harmed if the students aren't harmed if the state takes over a school district? What the statute says is if you fail to meet standards for eight straight years, eight straight years then the state has the option of merging your school district. You could take some pretty serious action at that point. Students aren't harmed. They've been in a failing school district for at least eight years. Taxpayers aren't harmed. They've been paying taxes and not getting their money's worth. So there's no injury to these plaintiffs or to anybody except perhaps the school board members who are likely to be out of a position eight years down the road. So that's why we say that their injury is too attenuated. That's why we say it's too indirect. It's too far down the line. They're not harmed by the statute, which doesn't require any particular taxing rate. They're not harmed by the learning standards, which don't have any coercive effect until many, many years down the road and only to the worst, most failing school districts. And that coercive effect doesn't affect the plaintiffs. It doesn't harm them in any way. So that's why we say that their injury is too attenuated to confer standing. Now, our second concern about their standing argument is, and again to go to how Mr. Polakoff explained his injury, we have to tax at a higher rate to meet the foundation level than another wealthier, property-rich school district. But that might make sense if they came in and their claim was, we want to tax at two and a half percent, right? But we won't reach the foundation level unless we're forced to tax at three. And so you forced us to tax at three. Maybe that's a claim. But if you come in and say, we tax at seven percent and we won't reach the foundation level and you force us to tax at at least three, but we've voluntarily chosen to tax at seven, how is that injury traceable to the state? The state, even if you accept the foundation level as a line, as some kind of a mandatory line, and for the reasons I've stated, it's not. In response to Justice Carmeier, I said, they tax at zero. They still get the same amount from the state. But even if you accept that the foundation level is some golden line that has to be reached, how can the state, which suggests three percent, injure a property taxpayer whose local property taxing district, his local school district, is taxing him at seven percent? That injury isn't traceable to the state's funding formula, which is calculated based on a three percent. And when I use the three percent, I'm talking about a unified school district. The rates are lower for a high school district or for a middle school or elementary school district. So that is, in essence, our standing argument, is that there are no penalties for not taxing at the suggested rate. That the supposed penalties that come from the learning standards are too attenuated and really injure the wrong people to be valid, indirect injuries sufficient to confer standing. And third, they don't tax at the foundation level. Their alleged injury of being forced to tax at least the foundation level is not in reality what they allege. They tax at twice the foundation level. So that is the core of our standing argument. As to the merits, turning to the merits, I would like to make two points on the merits of the plaintiff's claim. And the first is that the classification in the statute between property poor districts and property wealthy districts benefits property poor districts. So the numbers that they've used in their own complaint, which they got from the Illinois State Board of Education's website, show that the Homewood-Flossmoor School District, where one of the plaintiffs resides and pays taxes, receives approximately $3,000 per student in the year that the complaint was filed. And the school district to which they're comparing themselves, Neutrera, which they claim to be favored, receives $216 per student. The same goes for Cairo, which is a unified school district. The other plaintiff lives there. And the documents that they cite show that Cairo receives from the state $7,700 per student. And the supposedly benefited school district, the one that's advantaged under the statute, is receiving $379 per student from the state. So they've sued the state. And they said the state has caused us this injury. But if you look at what the state statute does, it bolsters their tax money. It tries to mitigate the effect of maldistributions of wealth on educational opportunity in the state. Now, it may not do a good enough job. Maybe more subsidies are required. I honestly don't know. But you cannot look at this statute and say that it discriminates against property-poor districts. It doesn't discriminate against them. It subsidizes them. And whether that subsidy is enough we really feel is not something that's judicially cognizable. That's a legislative determination, whether more redistribution is required. And that's the only, I mean, maybe not the only remedy, but that seems to be the principal remedy for the harm that they've alleged, is more subsidies, right? Because if the state gave them more money, their local districts could, if they chose to, tax at a lower rate. But the state already does give them more money. And so then the question is, how much more should they give them? And in that regard, we think as an equal protection claim, it fails to state a claim for disparate treatment, for unequal treatment. Because what it's really saying is we're getting beneficial treatment in the sense of state subsidies, but we need more. And that's not an equal protection claim. And then the second point I would like to make on the merits is just to discuss Edgar briefly. And this Court decided Edgar in 1997 and held that this statute, the very same statute that we're litigating right now, did not violate the Equal Protection Clause. And I'm going to quote from Edgar, which I guess is a little unusual, but it's said better than I think I could. So I will quote from Edgar, page, I think, 39 of that decision. The general structure of the state system of funding public schools through state and local resources and the particular amounts allocated for distribution as general state aid represent legislative efforts to strike a balance between the competing considerations of educational equality and local control. That's this statute that they're talking about, the exact same statute. And it goes on to say reasonable people could differ, whether it should favor equality more, local control more. But our court, speaking of this court, has deferential review. It only has to be rational to be upheld. And there's no basis to conclude that it is so irrational as to offend equal protection. That's this statute. Now, what's the difference between 1997 and today? The state has promulgated the Illinois Learning Standards. And in the documents that they've cited and that I've attached in my appendix and they've cited in their complaint, the Illinois Learning Standards are goals. They're outcome-based. And the local school districts continue to hire teachers, develop pedagogy, methodology to fulfill that. And there are no allegations in the complaint to the contrary. And, in fact, to the extent there's an allegation that these Illinois Learning Standards have overwhelmed or taken over the state's, the local school district's ability to control education, those allegations are simply contrary to the statute. If you look at Section 3.25d through f, it says exactly how the state will enforce the Illinois Learning Standards. It says it in the statute. You can't allege that the state's going to impose draconian measures if you fail the Illinois Learning Standards when we have a statute that says exactly what the state will do. If for two years you don't reach the Illinois Learning Standards, the state will give you more money. It will provide technical assistance and tutoring. If for four years your school district doesn't meet the Illinois Learning Standards, then the school board, the local school board, should develop a restructuring plan, which the state will review. If for five years you don't meet the Illinois Learning Standards, then the local school board, again, should develop a reorganization plan. And if for eight years, eight straight years, because if for one year you meet the standards, you go off the list and you start again. If for eight straight years you don't meet the Illinois Learning Standards, then the state has the authority to merge your district, a number of other things, remove board members, that kind of thing. That's what the statute says. So if that's the process for implementing the learning standards, and if the standards are not a curriculum but merely outcome-based, it can't be the case. It's conclusory to say they've taken over, that their allegation has to be accepted. It's true that they've taken over the local school districts. Are those learning standards, which are set forth in statute and their implementation set forth in statute, is that such a radical change from what existed in 1997 that what I read to you from Edgar is no longer the law? And I don't think it is. I mean, I think Edgar really, it says the legislature is going to determine the boundaries of equality and local control. And it's going to move. At different times, the legislature may seek more equality in school funding. At different times, they might seek more local control. But if every time they make a modification or amend the statute in some way or change education policy, a new equal protection claim arises because now there's less local control or there's less equality. That's not what Edgar said. Edgar said this is principally a question for the legislature to weigh. The legislature has made modifications. They've added the Illinois learning standards. They've also added additional subsidies for low-income students and for property-poor districts. They're constantly making modifications. But the holding of Edgar, which said let the legislature balance these things unless it's so beyond the pale that it's completely irrational what they've done, the court won't get involved. That still holds true. The legislature has imposed the learning standards, but they continue, as I pointed out, to subsidize property-poor districts to the tune of 10 to 20 times what they give to property-rich districts. And that is not irrational. It remains a rational system for funding school education. And I've covered all my points, so if there are no questions, I think I will rest here. Thank you. Thank you, Mr. Birx. Thank you, Your Honor. I believe Mr. Birx has made four points, and irrationally perhaps I'm going to cover them in the reverse order. The final point Mr. Birx made was about Edgar. Having described the situation and quoted from Edgar, I think it suffices, as he's done, I think it suffices to say in rebuttal we have alleged that there has been a major change, not a minor change. We are not here urging that every little incremental change in the school system produces a change in local control that requires Your Honors to look at it again. We have alleged a sea change, a massive change, the learning systems, the testing aligned to it, the learning standards, the testing aligned to it, the penalties imposed and so on. We believe and have alleged that that massive change results in an erosion of local control sufficient to change the legal situation, that the funding system, the inequity in the funding system no longer under these changed factual circumstances can produce the furthering of local control, which is the Edgar rational basis. We are entitled to a trial on those allegations. They should be taken as true. And the essence of what Mr. Birx is saying is that he's asking you to be the trier of fact, to decide whether those allegations about the size of the sea change and the legal consequences of the sea change erasing local control is true or not. Factual question, not for your resolution. The next point on the merits that Mr. Birx made had to do with the amount of money that the state gives to poor districts, which is larger, he says, than it gives to the richer districts, and that's true. But your honors, we are still left with the inequality, the unequal treatment, which is the essence of the complaint here up to the foundation level. And that infects the total tax taxing ability of the district. And it affects what happens to the taxpayers who are the plaintiffs. It remains true, notwithstanding that the state gives more money to poor districts than to rich districts. It remains true that if the poor districts don't tax at the assumed rate, they do not reach foundation level of funding, the basic per-pupil level of funding, whereas wealthy districts, it remains true, can get there without having to tax at the assumed rate. That's the unequal treatment. And the consequence of the unequal treatment is that the tax energy, if you will, of poor districts is exhausted by reaching the foundation level, not so with respect to the taxing energy or capacity of wealthy districts, so that the infection at the foundation, up to the foundation level, runs all the way to the top. Now, that relates to all the way through the taxing system. That leads me to the third of Mr. Burke's points, which is that the plaintiff's district's tax at a higher level than the foundation level, so how can they be injured? I want to put a metaphor to you, Your Honors. Imagine a two-stage race. In the first stage, the rules are unfair. They amount to putting a 50-pound backpack on the back of one of the runners because of the unfairness I've already described, the unequal treatment I've already described. I'm pretending that that's a 50-pound backpack. So in the first stage of the race, running up to the foundation level, one of the runners is at a real disadvantage as compared to the other. Then at the second stage, the rules go back to fairness. We eliminate the unfairness that applied at the first stage. And though unfairness in the rules applies, however, the runners have to begin at the place they ended at the end of the first stage. Obvious, isn't it, that contending that running the second stage eliminates the first stage unfairness is a non sequitur. And that's, in effect, what Mr. Burke's arguing. He's arguing that because we tax at higher than the level assumed necessary to get to the foundation level, there we have no injury. We have the injury of having run the first stage with that 50-pound backpack and having to run anything further with the disadvantage caused by that 50-pound backpack on our backs in the first stage. The final point that Mr. Burke made is that the injury that we allege is too attenuated. I'm not sure exactly what he meant by that. He said that if the penalties apply to the school districts, how does that injure the taxpayers in that district? Well, your honors, the taxpayers are paying money for the schools, for their students. This is not a situation in which the taxpayers are paying money for some other purpose. They're paying it for the schools. They're giving their money to fund education for their children. And if the consequences that the state's funding system and learning standards and tests and penalties visit upon their district is a consequence that visited upon the objective for which they paid the money to educate their kids, it certainly affects them directly. And therefore, we think that this attenuated argument is not persuasive. That's it, your honors. Unless you have further questions, I appreciate your indulgence. Thank you, Mr. Polikoff, for arguing the rebuttal based on the rebuttal point. It was very good. And Mr. Burks, thank you for your argument as well. Case number 113414, Paul Carr, et al., Appellants v. Christopher Koch, et al., Appellees is taken under advisement as agenda number 15. Thank you.